v. Herbert James Keathley, Director, Office of Workers' Compensation Programs. Arguments not to exceed 15 minutes for the petitioner, 15 minutes to be shared by respondents. Mr. Stonecipher for the petitioner. Mr. Stonecipher. Did I ever have you in class? It's really not your papers we're grading. It's the BRB, I think. An ALJ somewhere. Don't let him intimidate you. Me? Good morning. May it please the court, I'm Brett Stonecipher and I'm here on behalf of the appellant, Sunny Ridge Mining Company. We've had, obviously, cases that look more important because there's civil rights cases and there's criminal cases. But for those of us who practice in the area of federal black lung, this is an important case and there is an important issue here. This involves Herbert Keithley's claim for benefits under the Black Lung Benefits Act. On November the 18th, 2010, the Administrative Law Judge Stansel Gamm issued his initial decision in order and denial of benefits. This is one of the first cases that had the 15-year presumption under the Affordable Care Act. So he correctly first examined the number of years and said there was 16 and a half years of coal mining employment substantially similar to underground mining. And then he examined whether there was permanent total disability, relying primarily on the pulmonary function studies to determine that there was. From there, he then examined whether, nevertheless, the employer or the responsible operator had properly rebutted the rebuttable presumption that the totally disabled impairment was due to pneumoconiosis. In this initial case, there was a substantial amount of evidence presented from numerous physicians. The judge went through all of that evidence, deciding what he found to be credible and what not credible, and ultimately came down to Dr. Brody. Dr. Brody, he found at that time to be the most credible physician and to have properly rebutted the presumption. There was evidence that was overwhelming that there was no clinical pneumoconiosis, and Dr. Brody rebutted the presumption whether the impairment that he did have arose from coal dust exposure, thus constituting legal pneumoconiosis. At that point, there was an appeal to the Benefits Review Board by Mr. Keithley, and there was a cross-appeal by the employer regarding the weighing of the pulmonary function studies. It was our contention at that time that he had simply just weighed them in five to two and come up with an answer. Not weighed them, but counted them. Yes, sir. The Board at that time actually found both our argument and the argument raised by Keithley, which was the concerns over weighing of Dr. Brody had merit and remanded it back. With respect to the pulmonary function studies, he said you can't just simply just compare the evidence. You had to go into a detailed analysis of the evidence. With respect to Dr. Brody's report, there were several issues and criticisms that had a Dr. Brody at the Board, but primarily the Board's question at that point raised was whether Dr. Brody's statement that chronic bronchitis was a condition that when caused by pneumoconiosis would generally dissipate after cessation of exposure, whether that was a statement inconsistent with the act that required throwing his opinion out. Went back to the administrative law judge. The administrative judge. Excuse me? Went back to the same ALJ. Went back to the same ALJ. Judge Stancil came. That's correct. Who then came to a different conclusion. Who then reached a different conclusion. First of all, he actually, with respect to the pulmonary function studies, he re-weighed his evidence. He reconsidered it. He actually considered all of the criticisms raised by the Board before ultimately saying, he came to the conclusion that all of the pulmonary function tests were valid, all were equal, and then he once again said five to two, five beats two, and that was the answer. With respect to Dr. Brody, he answered each of the criticisms by the Board, most of them actually favorable, explaining why he disagreed with the Board's criticisms or concerns. There were a couple of the others that he thought maybe added diminished value, but ultimately what the judge found was that because Dr. Brody had made the statement that chronic bronchitis, when caused by a coal dust exposure, is a condition that generally dissipates when you remove the exposure, that that was a statement inconsistent with the underlying principles of the Act, and specifically 7-18-201. At that point, Brody was the only one left to rebut the presumption,  therefore benefits were awarded. We appealed to the BRB and ultimately to this Court. There are two issues here right now, and we think they both have merit, but frankly as far as the precedential value from a practitioner's standpoint of federal black lung, the issue that has the most precedential impact is the weighing of Dr. Brody's report and the complete discrediting of Dr. Brody's report based on a hostile-to-the-Act analysis. In light of that, I want to first draw attention to that and analyze that. To the extent there's time left, I'll then return to the argument regarding the weighing of the pulmonary function studies, and if not, then we would rest on our brief on that. The administrative law judge, first we would note that while he did discuss Dr. Brody's opinion on other issues and maybe found a couple issues that added diminished value, the reason he threw out Dr. Brody entirely and most significantly because he found that Dr. Brody's statement regarding chronic bronchitis was a statement inconsistent with the underlying regulations in the Act. Is it also true that there's not much else? There's not much else? To his reason for dealing with Dr. Brody's statement that way? No, that was the basic reason. He could have come back and there were different issues that he had with Dr. Brody as far as that had some diminished value. But he threw him out for one reason. He said he made a statement hostile to the Act and threw him out completely to the point where Dr. Brody was not enough even to overcome the presumption, whereas he had been before. So he threw him out completely. So what we're looking at now is a simple question. Did Dr. Brody make the statement? Was that statement inconsistent with the underlying principles of the Act? Did he make the statement? Yep, he sure did. Dr. Brody said, in pretty much of a quote, well, chronic bronchitis, when it's caused by cold disc exposure, is a condition that generally dissipates when removed from exposure. So the next question is, is that inconsistent with the Act? We say no. Section 201, which is the primary issue here, Section 201 defines pneumoconiosis, and it agrees it includes both clinical and legal pneumoconiosis. It also includes the provision 201C that recognizes pneumoconiosis as a latent and progressive disease. But what 201 does not do in any way is there's no statement that chronic bronchitis is a condition that's latent and progressive. It's just not there. The word chronic bronchitis is not even in this portion of the Act. But chronic bronchitis, when caused by coal mine exposure, is pneumoconiosis, right? It can meet the definition of legal pneumoconiosis at that point. It does meet the definition. It does meet the definition at that point. When they say chronic bronchitis, when caused by coal mine, whatever the language. Coal mining exposure. Caused by coal mining. That's the definition of legal pneumoconiosis. It does meet the definition of legal pneumoconiosis. It's as if he said legal pneumoconiosis. That's what I'm struggling with here. I understand. I think it comes down to this. It's the legal equivalent of saying legal pneumoconiosis and then the rest of the sentence. I understand. If you look at 201 only in a vacuum, then maybe you can look at that and say, well, no, there's legal pneumoconiosis. It's included, therefore it's latent and progressive. But the problem is that 201C is not in a vacuum. We have the preamble. We have the regulations. We have the underlying. They explain where this came from. 201C was a codification of must be 100 cases that we've actually cited. It's my favorite footnote I've ever actually put in a brief because it's one after another. And actually looked at most of those cases and did word searches of. It was a codification of those cases and the medical evidence that was relied on that addressed the progressiveness and latency of pneumoconiosis if it were removed from exposure, that it would continue to progress. The problem is that none of those cases address chronic bronchitis. For that matter, they don't even address legal pneumoconiosis. They certainly don't address chronic bronchitis. None of the medical evidence that they relied on in creating this provision addressed chronic bronchitis. It addresses clinical pneumoconiosis. And all of those cases discuss the medical evidence that indicates that it goes from how the x-rays, how you can have an x-ray at a point when they're just out of coal mine exposure and that it can worsen over periods of time. Well, that's fine. There's no question that there's underlying evidence to establish that clinical pneumoconiosis is a progressive and latent disease. And Dr. Brody recognized that. But what Dr. Brody said was specifically one condition, not general conditions, but one condition, chronic bronchitis, which is an irritant-related disease. Chronic bronchitis is a condition that when caused by coldest exposure usually dissipates when you remove it from exposure. That's the statement that he made that has his report completely thrown out. In looking at those cases, I did find one case that mentioned chronic bronchitis, and it was the Label Processing versus Sorrow case from the Third Circuit in 1995. That case recognized an opinion from the surgeon general that said, well, he did not rule out the potential that chronic bronchitis could be progressive and latent. That is far from stating that this is a progressive and latent disease that always progresses outside of coldest exposure, which is what they've crucified Dr. Brody for on this case, for making that statement. Apart from the history of it or the ultimate truth of it, isn't that regulation in effect saying that the system is not supposed to discount doctors or should discount doctors who assume that even legal pneumoconiosis is not progressive? I know there's a lot of big words in that question. Well, and I think what you're getting at is this is similar to what this court looked at in the Cumberland River Coal versus Banks case. In that case, what Dr. Jarboe had apparently said, and you have to read it in between the lines, but apparently what Dr. Jarboe said was that, and it was not the reason it was thrown out, it was one of the factors, and it wasn't necessarily a hostile to the act statement that the judge looked at, but one of the factors that concerned the judge in that case was that apparently Dr. Jarboe had indicated that any pulmonary, because they were so far away from the coal dust exposure, that any pulmonary impairment now wouldn't be expected to be caused by coal dust exposure. Well, first of all, you've got clinical pneumoconiosis, which we know is progressive in there, and that's a broad statement, but that's not what we have here. We have one individual condition, chronic bronchitis, and a doctor that made a medical opinion that said it is not caused by, or that it usually dissipates, an opinion that is not contradicted by any of the case laws cited in the preamble for creating the statute, a condition or a statement that's not contradicted by any of the medical studies that are cited. What was the sole reason for Dr. Brody's conclusion? What was the sole reason for Dr. Brody's conclusion? It was his experience. His experience. He's a pulmonary specialist. He's been dealing with these companies for a long time. He deals with chronic bronchitis. But his explanation is because it's not progressive, right? His reasoning was, in his experience, that this condition, chronic bronchitis, generally dissipates. It's just a fact. That's what he knows, and that's what he was going for. That's the main thing he relied on in coming to his conclusion based on it. That was one of the factors he relied on in determining chronic bronchitis. What else did he rely on? It probably was the primary, because he does not believe, I agree, it was the primary. He does not believe that that condition, he will agree that it can be caused, and at one point in time it can be caused, called legal pneumoconiosis, because he'll say that it can cause the condition. It's just that down the road, if he sees that condition, he doesn't believe it. I guess what I'm getting at is there might be, you might say, why should his opinion about whether some sickness is progressive shouldn't in fact and otherwise support a judgment that's supported by A, B, C, and D? But here, that conclusion is the only expressed support for his conclusion. That's why I'm asking. It's a little bit different. I understand. I think, and if I just could finish up, I know my time is up. I think had the judge just simply said that, well, I have a problem to that extent, and in weighing it he's not explaining himself fully enough, maybe. But what the judge said was he made this statement. This statement is inconsistent with the act, and therefore I'm throwing Dr. Brody out completely. That's what occurred. Thank you, Counselor. Good morning. May it please the Court, my name is Anne Marie Scarpino, and I represent the Director, Office of Workers' Compensation Programs. I have divided my time with Mr. Carter. I'm going to take 10 minutes, and Mr. Carter is going to take five of the 15 minutes. Just so I'm clear, your office typically just defends the decisions of the board? Or do you take independent positions from the board? We do take independent positions. Sometimes we do. Do you take the same position as the ALJ always, or do you sometimes disagree with the ALJ? We often disagree with the ALJ. So you're just sort of an independent body that sort of takes positions? Yes, Your Honor, that is correct. We do take independent positions. We do not defend the positions of either the ALJ or the BRB consistently. We represent the Director. Is that sort of like a government amicus or something like that? No, the Director actually is the administrator of the Black Lung Program, and we represent the Director's position. But the ALJ's decision is not a decision of the Black Lung Program? It is a decision of the Black Lung Program, but the ALJ is independent of the Director. It's a separate part of the labor agency. So you might conceivably be disagreeing with both the ALJ, the board, and the coal miner. You might take a position that disagrees with all those people, or not? That is correct, depending on the case and the facts. However, today we are agreeing that the ALJ. I want to see how your position fits in, because it's a little puzzling. It's a little unusual, isn't it? Usually, if an agency appears before us, they're defending the decisions of the agency. Yes, that is. It is an unusual position, Your Honor. Ms. Carpino, I wanted to give you a question, and you may just answer it at any point during your presentation, or maybe it's for your counterpart. In the board's decision, they use the terms chronic bronchitis and pneumoconiosis interchangeably, it seems. Sonny Ridge has argued that the allegedly hostile statement of Dr. Brody was made with respect to chronic bronchitis and not pneumoconiosis, suggesting that the two are distinct conditions. And while the regs refer specifically to one as a latent and progressive disease, chronic bronchitis is not so referred or defined. So I want to know, how are the two related? And in your assessment, why should Dr. Brody's opinion be discredited if it was referring to a related condition and not the specific condition defined by the statute? Although under Judge Rogers' questioning, counsel seemed to appear that the two may be the same under certain circumstances. Yes, Your Honor. There are two types of pneumoconiosis that the statute defines. Clinical pneumoconiosis, which is typically seen on X-ray and consists of those diseases that the medical community consider to be pneumoconiosis. Typically, you will see some type of particulate matter in the lungs that is visible on X-ray. Legal pneumoconiosis is a very broad term and includes any type of pulmonary disease that arises or is aggravated out of coal mine employment, out of a miner inhaling coal mine dust. So chronic bronchitis could be under that umbrella? Chronic bronchitis is under the umbrella of legal pneumoconiosis. If it is caused by coal mining. Dr. Brody actually diagnosed chronic obstructive pulmonary disease, which again is an umbrella term which often includes chronic bronchitis, asthma, and emphysema. Couldn't some kinds of legal pneumoconiosis be progressive? Latent and progressive, is that the term? Yes. And other kinds not consistent with the regulation? Regulations say that all legal pneumoconiosis is latent and progressive. Yes, it does. It can be latent and progressive. Well, can be is different than it does, right? I'm sorry? Can be is different than it does, right? That's correct. It does not always have to be. Why can't we read can be to say some types of respiratory disease, which are caused by coal mining and therefore are legal pneumoconiosis, are latent and progressive and other kinds aren't? If a disease is caused by coal dust, basically what the regulation does is to prevent what happened here. Dr. Brody stated that chronic bronchitis usually dissipates once the miner leaves the mines. However, as even counsel for the employer has acknowledged, it was the sole basis on which Dr. Brody eliminated coal dust as a cause of the miner's pulmonary disease. Under the regulation, the regulation itself basically prevents that by recognizing that if a judge, and the question here at what the employer is arguing, is whether Dr. Brody properly eliminated coal dust exposure by finding that it was latent and progressive. If you do that, that is considered to be contrary or hostile to the regulation, as this court has recognized in the Banks case, where we had a similar situation where Dr. Jarboe had diagnosed the claimant with chronic bronchitis and emphysema and said that neither condition was related because of the amount of time that the miner had left the mines and between that time and the time that the claimant's symptoms appeared. The court rejected that. The ALJ rejected that on that basis by saying that the doctor's opinion was inconsistent with the regulations, and the court affirmed the ALJ's position, recognizing that a doctor, by just merely eliminating coal dust, because he believes that it cannot be latent and progressive, is inconsistent with the regulation. Also, in the case of Green v. King James Mining, Dr. Westerfield made a similar type of statement, eliminating the miner's chronic bronchitis and COPD on the basis that the symptoms had appeared long after the miner had left the mines. And although it was in dicta, the court recognized that the ALJ could properly reject the doctor's opinion on that basis. You know, Judge Rogers hasn't been here quite as long as I have. Almost. Almost. It's been 21 years, and I have to say, it used to be that we had at least one black lung case on every docket that we had in court back in those days. And at that time, I don't remember there being any kind of pneumoconiosis that we were concerned with other than medical pneumoconiosis. So this concept of legal pneumoconiosis is something of a later development, is it not? That is correct. I believe Congress had altered the definition of pneumoconiosis in the statute in 1978 to recognize that diseases, chronic diseases, pulmonary diseases that are caused by coal dust are compensable. The courts had continued to recognize that, and the Department of Labor changed its regulations to specifically define clinical and legal pneumoconiosis in 2000. Okay. And then since then, something else has happened. This presumption, the 15-year presumption, is reasonably new, isn't it? It was reinstated. That is correct. It was reinstated. Right. It was taken out of the statute, I believe, in the early 80s and has just been recently reinstated. Okay. Got it. Is that the Byrd Amendment or something? Yes, under the Byrd Amendments. There were a number of changes to the statute. Well, I think throughout this entire history that I have with the black lung cases, Dr. Brody has been one of the experts who's appeared for the coal mining owners, the coal mine owners. To your knowledge, has he ever found pneumoconiosis in one of these cases? Typically, he does not, Your Honor. I couldn't say specifically if there are any cases where he has conceded. Okay. All right. That's outside the record. Yeah. Yes. Completely. With regard to the regulation, I believe that what counsel is doing here is challenging something that is pretty well established. If you look at the plain language of the regulation, as I said in response to Judge Donald's question, the statute under 718.201, which is the relevant portion of the statute that defines pneumoconiosis, defines pneumoconiosis as both clinical and legal. And in Section C, which talks about latent and progressive, that section of the statute does not qualify by saying only clinical pneumoconiosis can be latent and progressive. And, indeed, the Fourth Circuit in the Barber case cited in our brief has recognized that the legal definition of pneumoconiosis is incorporated into every instance in the statute and the regulation where that term is used. So there is no basis for saying that pneumoconiosis that is latent and progressive can only be clinical pneumoconiosis. As far as Dr. Brody's statement, as I said, he had pretty well eliminated coal dust exposure as a cause of the claimant's disease solely on the basis of the lack of progressivity. Notably, the claimant ended his coal mine employment in 1998, and in 2000, he stopped smoking. Dr. Brody nowhere in his report explained why those two years between the cessation of coal mining employment and the cessation of smoking, why one was more important than the other in determining the cause of the miner's disease. What would the situation be if Dr. Brody had just omitted those words? Omitted, I'm sorry, which words? Because it doesn't normally, the words we're arguing about here. Oh, okay, because it generally doesn't progress? Then his report probably would have had no basis at all for eliminating coal dust as a cause of his disease. You're not saying these words infected what otherwise is sufficient analysis. You're just saying that these words are the only part of the analysis and they're insufficient. I'm saying that. We attribute that to the ALJ. Yes. Okay. If the court has no other questions. No, thank you. Okay, thank you. Your Honors, please, I'm Miller Kent Carter, and on this appeal I represent Herbert Keithley, but I'm at a distinct disadvantage because I actually don't do black lung and I know very little about it. I do know, though, that the regulation 201. I should give you a clear mind. I hope, Judge. I do know that the regulation 201 is pretty plain on its face, and if, as we do, as Mr. Stonecipher suggested in his brief, look at this as an issue of first impression in this circuit and treat it as such, then what we could stop short on here is that if the definition of pneumoconiosis in 201 is both legal and clinical, and it is, and if we look at C and it says pneumoconiosis is a latent and progressive disease, and it is, and if we look at subpart B, that a disease arising out of coal mining and plumbing includes any chronic pulmonary disease or respiratory disease, and if we go back to A under 201 and it says that the definition applies to the whole act, then it's quite plain here that since Dr. Brody said that the basis for his opinion that pneumoconiosis was not the source of this man's disability is because of the passage of the length of time, which is what he said in his deposition, then his comment, his belief, and his opinion is contrary to the regulation, which is implementing the act and, therefore, is in violation of the hostility doctrine. Therefore, what we have here is a situation where the ALJ was well within his rights. If you can look at the preamble and say that having an opinion contrary to it is hostile to the act. Well, Dr. Brody, since it looks like he's graduated from medical school 40 years ago and has been practicing for 35 years, it's got some age on him now. I'm not criticizing that. It looks like I may be older than even he is, but is it possible that his head is back in the medical pneumoconiosis and that he's just not willing to expand his scientific knowledge to cover legal pneumoconiosis? Is that maybe what's going on here? Obviously, Judge, that's possible. An equal possibility is that he's looking at his experience, which is contrary to the act. It's also possible that this is just genuinely his opinion. I like to try to be as fair as I can be, but my opinion is that his opinion is contrary to the act and, as such, it is hostile, and, as such, the ALJ is deserving of this court's affirmation. That's all I have. Thank you, counsel. I appreciate it. Mr. Stonesifer. I want to first, and I apologize if I indicated before, that Dr. Brody's sole reason for finding chronic bronchitis not to be related was that his opinion that generally it would dissipate if it had been caused by coal dust exposure because of the nature of that particular disease. He also has reason, and I know going through the detailed discussion, one, he absolutely clarifies that he knows the difference in legal pneumoconiosis and clinical, and he absolutely states, because it's true, there's medical evidence in the preamble to support it, that clinical pneumoconiosis does progress, and he admits that, so he's not making any mistake there. So that's first. Second, one of the reasons he found that this case, the chronic bronchitis, was not related to coal dust exposure is he found another reason for it, and that was the smoking, and he said the smoking in and of itself was sufficient to have caused it. Now, that is an issue for the judge, and that was brought out by Ms. Carpino as far as whether there were other reasons that maybe to undermine Dr. Brody. Fine. That's for the judge. He actually had addressed all of those the first time when he found Dr. Brody to be reasonable, to be the most probative, and to be the one that he actually denied benefits based on. So he's weighed the evidence one time and would like to see him weigh it again. So was he led by the Benefits Review Board, or he just got confused, or what? I think he found, I think he definitely read, the Benefits Review Board definitely questioned whether what Dr. Brody's statement was was a statement inconsistent with the Act. I think he was definitely being led by the Benefits Review Board, but that's an opinion, and all we can do is look at what the administrative law judge wrote. What part of the Benefits Review Board decision arguably led him in that direction? The Benefits Review Board specifically said, we want him to go back and look at this because we questioned whether this statement was a statement inconsistent with the Act. They didn't say it was. They just said we questioned it. They said we questioned it. They did not say it was. They did not make a finding, so they sent it back. They knew enough to let the ALJ find that. There's one other thing I'd like to point out and what I'd like to, I guess, leave you with. In offering rebuttal, and I did want to respond to these couple of statements, but I want to point out not what they said, what they relied on. I want to point out what's been missing. What's missing from their brief and from their oral argument, and it's because it doesn't exist. They do not point to any cases that were underlined in the preamble that support the position that chronic bronchitis is a latent progressive disease, even absent continued exposure. Something that they say now, oh, that's an underlying proposition of the Act, and a statement to the contrary is a statement contrary to the Act. That's sort of legislative history of the statute or of the regulation? It's sort of the regulation. It's in the preamble to the regulation. You're saying that if we interpret the regulation in accordance with what the regulators were trying to accomplish, we wouldn't read it so broadly. Yes. All they talked about was clinical. None of the medical studies that are cited there, none of them address chronic bronchitis. So now they want to say it's this one statement that Dr. Brody makes, a statement to chronic bronchitis. Did you notice some comment rulemaking? Yes, and I cited in the brief, I cited to the actual Federal Register where it is. Were there comments saying this shouldn't extend to? This was in response to the comments. This was in response to the comments by the director in drafting the regulations. In other words, there were actually a lot of other doctors that had been placed in there. They gave opinions that clinical pneumoconiosis wasn't progressive, and it was in response to that. I'm talking about comments in the notice and comment when they promulgated this thing. Is it clear from the comments that it only extended to clinical as opposed to legal pneumoconiosis? I think it's clear from the comments that that's what they were addressing. I see. All they talked about was clinical. Thank you. No further questions? Thank you. The case will be submitted.